Filed 6/11/26  Brammell v. Canon CA4/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THOMAS L. BRAMMELL et al., | D086579 |
| Plaintiffs and Respondents, | (Super. Ct. No. 25CV017610N) |
| v. | |
| JOEL CANON et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of San Diego County, Earl H. Maas III, Judge.  Affirmed.

Joel Canon and Rossi Canon, in pro. per., for Defendants and Appellants.

Carlsbad Law Group, J.L. Sean Slattery and Daniel A. Oberle for Plaintiffs and Respondents.

## I. INTRODUCTION

Joel Canon and Rossi Canon (the Canons) appeal from an order denying their motion to disqualify J.L. Sean Slattery and Carlsbad Law Group as counsel for Thomas Brammell and Elaine Brammell (the Brammells).  The Canons argue the court's order must be overturned because

the court lacked personal jurisdiction, and even assuming jurisdiction, the Brammells' counsel were necessary witnesses who engaged in misconduct that impacts the fairness of the proceedings. Given the procedural posture of this case, the issue of personal jurisdiction is not properly before us. On the remaining question, we conclude the trial court did not abuse its discretion when it denied the motion to disqualify opposing counsel. We affirm the order. We also decline the Brammells' request for sanctions.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The Brammells and the Canons are neighbors who share a backyard property line. The location of that property line is disputed. The disagreement emerged in early to mid-March 2025, when Mr. Brammell and Mr. Canon disagreed on the exact location of their mutual property boundary for purposes of Mr. Canon's new fence placement. On March 17, 2025, Mr. Brammell informed Mr. Canon that Mr. Brammell commissioned a survey to confirm the exact location of the property line. Mr. Canon's fence construction started before Mr. Brammell's land survey was completed.

On March 31, the dispute escalated when the Canons found four of their newly placed fence posts that were set over the disputed property line towards the Brammells, uprooted and on the ground. The Canons had their workers reinstall six new fence posts back in the same controverted location. On April 1, Mr. Canon reported to the local police department that he observed Mr. Brammell shaking the new posts after they were installed. When a police officer spoke later that day with Mr. Brammell, Mr. Brammell stated he "consulted a civil attorney who advised him that the new fence was being built on his property, and he could remove the new fence posts from the ground if he wanted."

On April 4, three days later, the Brammells filed a civil complaint, alleging several causes of action arising from the property dispute. On April 7, the suit was personally served on Ms. Canon, and on April 19, the legal papers were served on Mr. Canon by posting them on the Canons' gate.

On May 1, Slattery sent a letter to the Canons. Slattery stated the Canons' fence encroached on the Brammells' property by approximately three feet. This assertion was based on the now-completed professional boundary survey identifying the disputed property line's exact location. The letter referenced multiple earlier written and verbal objections communicated to the Canons about their fence construction. The letter explained the Canons' "actions form the basis of the lawsuit now pending in the San Diego County Superior Court, *Brammell v. Canon*." The letter also stated, "the encroaching fence will be removed by a licensed contractor" on May 9, the local police department had been notified, and the Canons should not interfere with or obstruct the removal of the fence. However, Slattery wrote, the Canons could remove the fence before May 9, should they want. Otherwise, the letter warned, the fence and any debris would be considered abandoned and disposed of. On May 2, the Canons sent a letter to Slattery objecting to the fence removal.

Then, on May 6, the Canons moved to quash service of the summons and the Brammells' lawsuit. A few days later, on May 9, Slattery filed an ex parte application for a temporary restraining order and order to show cause for a preliminary injunction to prevent the Canons from encroaching on the Brammells' property. The court set a future hearing on the motion for preliminary injunction and ordered a temporary restraining order between the parties until that hearing. That order directed "[b]oth parties shall stay off each other's property and not put up or take down any fence or retaining

3

wall. Any agents or landscaping workers shall not cross over the property line (disputed area). Cameras may be installed and focused only on the property line."[1] The court also directed "service of documents shall be through U.S. Post Mail."

On May 15, the Canons responded with a motion to disqualify Slattery and his law firm as counsel, declaring Slattery engaged in multiple instances of misconduct.

The next day, the Brammells filed an amended complaint and amended summons. Slattery declared the amended complaint was served by mail "pursuant to leave granted by this [c]ourt," and "pursuant to this [c]ourt's order authorizing alternative service."

The Brammells also opposed the motion to quash and motion to disqualify counsel. Slattery provided a declaration detailing service on the Canons of the Brammells' summons, complaint, and ex parte application, and the Canons' April 30, 2025 petition for a temporary restraining order against Mr. Brammell.

The Canons filed a supplemental brief asserting Slattery "will be called as a fact witness in pending litigation," claiming he "is a material fact witness" in the Canons' "pending Civil Harassment and Slander of Title action" and that they would depose him regarding "instructions [he] allegedly g[ave] to [the Brammells] to vandalize [the Canons'] property." The Canons stated Slattery would be "[p]otentially named as a co-defendant should discovery reveal personal participation in retaliatory conduct."

---

1  As the dispute continued, the Brammells and the Canons appeared to document each other through photographs and videos of the other's property.

4

The trial court denied the Canons' motion to quash and the motion to disqualify counsel. As to their motion to disqualify Slattery, the court found the Canons failed to demonstrate good cause to grant that request.

Prior to the court issuing a final judgment in the case, the Canons appealed the court's orders. Because an order denying a motion to quash service of summons is not directly appealable, we dismissed the portion of the appeal taken from the motion to quash and permitted the appeal to proceed only on "the portion of the order denying the motion to disqualify the [Brammells'] attorneys."[2]

---

2    Despite our order, the Canons continue to urge us to review whether the trial court had personal jurisdiction to decide the motion to disqualify counsel. We decline to do so. Other than appealing from a default judgment, a petition for writ of mandate under Code of Civil Procedure section 418.10, subdivision (c), is the exclusive method for challenging a trial court's order refusing to quash service. (*People v. Mena* (2012) 54 Cal.4th 146, 155–156 [citing *McCorkle v. City of Los Angeles* (1969) 70 Cal.2d 252, 257].) The Canons filed no such petition. We deny their motion to treat this appeal as a petition for writ of mandate because (1) they have failed to demonstrate any extraordinary circumstances that would warrant doing so (*MinCal Consumer Law Group v. Carlsbad Police Dept.* (2013) 214 Cal.App.4th 259, 265), and (2) they have failed to address the trial court's ruling that they made a general appearance by filing their motion to disqualify counsel. (See Code Civ. Proc., § 410.50, subd. (a) ["A general appearance by a party is equivalent to personal service of summons on such party"]; *Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 52 ["A general appearance occurs when the defendant takes part in the action or in some manner recognizes the authority of the court to proceed . . . . [A] party who seeks relief on any basis other than a motion to quash for lack of personal jurisdiction will be deemed to have made a general appearance and waived all objections to defects in service, process, or personal jurisdiction."].)

5

## III. DISCUSSION

On the limited grounds we authorized for the Canons' appeal to proceed, we conclude the court did not abuse its discretion when it denied the motion to disqualify Slattery or his firm. Also, because we are not convinced the Canons' appeal was taken for an improper motive, we decline the Brammells' request to order sanctions against the Canons.

A.  *Scope of Review*

This case does not involve any attorney-client relationship between the Canons and opposing counsel, nor any issue of confidential communications. Instead, the Canons seek to disqualify Slattery and his law firm, alleging Slattery, his law partner Daniel Oberle, and by extension, their firm, Carlsbad Law Group, are necessary witnesses who themselves committed misconduct.

The Canons assert that certain post-appeal conduct demonstrates the need for disqualification. We do not consider post-appeal conduct because this falls outside the record on appeal. (See *Brokopp v. Ford Motor Co.* (1977) 71 Cal.App.3d 841, 862.) The Canons attempted to augment the record on appeal with materials not presented to the trial court before it ruled on the motion to disqualify. We denied this request because materials not before the trial court prior to issuance of the disputed order are not proper for augmenting an appellate record. (Cal. Rules of Court, rule 8.155(a)(1); *Vons Companies, Inc. v. Seabest Foods, Inc*. (1996) 14 Cal.4th 434, 444, fn. 3.)

We also do not consider the Canons' argument that Oberle should be disqualified, because these arguments were not made to the trial court. (See *American Continental Ins. Co. v. C & Z Timber Co.* (1987) 195 Cal.App.3d 1271, 1281 ["An argument or theory will generally not be considered if it is raised for the first time on appeal."].) If the Canons believe new meritorious

6

grounds exist for disqualification of Slattery, Oberle, or the Carlsbad Law Group, then their remedy is to raise the issue with the trial court.

Lastly, while the Canons made several arguments for disqualification in the trial court, we review only the grounds raised on appeal and only those that cite to legal authority. (*Johnson v. Department of Transportation* (2025) 109 Cal.App.5th 917, 935 [arguments made at trial but not raised in the appellant's opening brief are forfeited and need not be addressed]; *Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 (*Hernandez*) [" ' "the party asserting trial court error may not . . . rest on the bare assertion of error but must present argument and legal authority on each point raised. [Citation.]" [Citations.] When an appellant raises an issue "but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' "].)

B.    *Motion to Disqualify Counsel*

"A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.' [Citations.] Ultimately, disqualification motions involve a conflict between the client's right to counsel of their choice and the need to maintain ethical standards of professional responsibility. [Citation.] The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145.)

7

"An order granting or denying a disqualification motion . . . is reviewed for abuse of discretion." (*Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, 1203 (*Kennedy*).)  Under the abuse of discretion standard, "[t]he trial court's ruling is presumed correct [citation] and reversal is permissible 'only when there is no reasonable basis for the trial court's decision' [citation].  We accept as correct all of the court's express or implied findings that are supported by substantial evidence." (*Ibid*.)  " 'In viewing the evidence, we look only to the evidence supporting the prevailing party.  [Citation.]  We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact.  [Citation.]  Where the trial court has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable.' " (*Ibid*.) "So far as [the court] has passed on the weight of evidence or the credibility of witnesses, its implied findings are conclusive.  This rule is equally applicable whether the evidence is oral or documentary." (*Griffith Co. v. San Diego College for Women* (1955) 45 Cal.2d 501, 508.)

      *1.     Necessary Witness*

The Canons assert Slattery and, by extension his firm, "became . . . necessary witness[es] on material facts."  Specifically, the Canons state Mr. Brammell told a police officer that " 'his attorney told him he could remove the fence posts, if he wanted.' "  In support of their argument, the Canons cite rule 3.7 of the California Rules of Professional Conduct.

Rule 3.7 of the California Rules of Professional Conduct provides:  "A lawyer shall not act as an advocate in a trial in which the lawyer is likely to be a witness unless: [¶] (1) the lawyer's testimony relates to an uncontested issue or matter; [¶] (2) the lawyer's testimony relates to the nature and value of legal services rendered in the case; or [¶] (3) the lawyer has obtained

informed written consent from the client."  While rule 3.7 allows an attorney to act as both advocate and witness if the client gives informed written consent, the court maintains discretion to disqualify an attorney if there is "a convincing demonstration of detriment to the opponent or injury to the integrity of the judicial process.  [Citations.]  In other words . . . the trial court can disqualify counsel only where it is confronted with manifest interests which it must protect from palpable prejudice."  (*Lyle v. Superior Court* (1981) 122 Cal.App.3d 470, 482.)  In deciding whether to disqualify an attorney who may be called as a witness, the court must consider whether: (1) counsel's testimony is genuinely needed; (2) disqualification is sought for tactical reasons; and (3) " ' "the combined effects of the strong interest parties have in representation by counsel of their choice, and in avoiding the duplicate expense and time-consuming effort involved in replacing counsel already familiar with the case." ' "  (*Lopez v. Lopez* (2022) 81 Cal.App.5th 412, 424; *Graphic Process Co. v. Superior Court* (1979) 95 Cal.App.3d 43, 52 [parties cannot cause disqualification "simply by threatening to call the opposing attorney as a witness"].)

Here, the Canons failed to show Slattery or his firm are " ' "in fact, genuinely needed." ' "  (*Smith, Smith & Kring v. Superior Court* (1997) 60 Cal.App.4th 573, 581.)  To determine the necessity of counsel's testimony, the court considers " 'the significance of the matters to which he might testify, the weight his testimony might have in resolving such matters, and the availability of other witnesses or documentary evidence by which these matters may be independently established.' "  (*Ibid*.)  The Canons did not explain what admissible facts Slattery would provide.  Their argument before the trial court that they would depose and potentially name him as a co-defendant "*should* discovery reveal [his] personal participation in retaliatory

9

conduct" suggests they do not know what relevant testimony Slattery might offer. (Italics added.) Moreover, the Canons did not address why other documentary evidence or witnesses available to them would not suffice. Because other evidence like the police report existed in lieu of Slattery's testimony, and the value of his testimony was at best speculative, the court had a reasonable basis for concluding that Slattery is not a necessary witness. We conclude, therefore, the court did not abuse its discretion.

### 2.    *Allegations of Misconduct*

The Canons next contend the court was required to disqualify the Brammells' counsel due to misconduct, asserting Slattery and his firm violated several rules of professional behavior. On the grounds properly placed before us (see *Hernandez, supra*, 37 Cal.App.5th at p. 277), we conclude the court did not abuse its discretion.

Violating a rule of professional conduct does not "*necessarily* warrant[ ]" disqualification. (*Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 303 (*Gregori*); *Higdon v. Superior Court* (1991) 227 Cal.App.3d 1667, 1672–1673 [listing cases].) A trial court may grant a motion for disqualification "where an attorney's continued representation threatens an opposing litigant with cognizable injury or would undermine the integrity of the judicial process." (*Kennedy, supra,* 201 Cal.App.4th at p. 1205.) And "the significant question is whether there exists a genuine likelihood that the status or misconduct of the attorney in question will affect the outcome of the proceedings before the court." (*Gregori,* at p. 309.) "Disqualification is inappropriate . . . simply to punish a dereliction that will likely have no substantial continuing effect on future judicial proceedings." (*Ibid.*)

Applying the abuse of discretion standard here, we conclude there existed reasonable bases for the trial court to determine counsel did not

10

commit misconduct. For example, the Canons assert actions by Slattery amounted to moral turpitude because Slattery advised the Brammells' to trespass on the Canons' property and vandalize their fence posts. "The commission of any act involving moral turpitude . . . constitutes a cause for disbarment or suspension" of the attorney. (Bus. & Prof. Code, § 6106.) Substantial evidence supports, however, that Slattery's advice to Mr. Brammell was not that Mr. Brammell could trespass; it was that "the new fence was being built on [*the Brammells'*] property, and [Mr. Brammell] could remove the new fence posts from the ground if he wanted." This advice takes as correct that the property belongs to the Brammells, not that they should trespass on or vandalize the Canons' property. As such, the court had a reasonable basis to find that counsel had not committed misconduct. Further, the Canons make no argument as to why the letter would have any lasting impact on the proceedings, especially considering that the court issued a temporary restraining order requiring both parties to stay off each other's property and refrain from putting up or taking down any fence or wall.

The Canons also allege counsel "[p]ublicly disclos[ed] [the Canons'] real-estate license, private emails, phone numbers, and confidential restraining-order filings," having "no substantial purpose other than to embarrass or burden" the Canons.[3] American Bar Association Model Rule of

---

[3] For this argument, the Canons cite to "Rule 4.4(a)" calling it a California Rule of Professional Conduct. However, "Rule 4.4(a)" cited by the Canons reveals that the rule they rely on is not the California Rule of Professional Conduct but rather the American Bar Association (ABA) Model Rule of Professional Conduct. (Compare Cal. Rules Prof. Conduct, rule 4.4 with ABA Model Rules Prof. Conduct, rule 4.4(a).) Nonetheless, "the ABA code . . . 'serves to guide California courts.' " (*Gregori, supra*, 207 Cal.App.3d

11

Professional Conduct, rule 4.4(a) states "a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person." This rule has not been adopted in the California Rules of Professional Conduct but it is reflected in Code of Civil Procedure section 128.7. That section provides an attorney or unrepresented party certifies by presenting their advocacy to the court that their actions are "not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." (Code Civ. Proc., § 128.7, subd. (b)(1).) Here, substantial evidence supports that Slattery's actions were taken for legitimate litigation purposes. Slattery referred to the Canons' professional information to explain how additional notice of an ex parte application was sent to the Canons. Slattery offered the Canons' request for a temporary restraining order as circumstantial evidence that the Canons had been properly served or had actual notice of the dispute in this case. But even assuming for purposes of argument that this amounted to misconduct, the Canons offered no support for why sanctions short of disqualification would not address the situation.

The Canons further contend Slattery's litigation tactics were committed in bad faith. They argue, for example, that he backdated filings and misinformed the trial court that the amended complaint had been filed and served " 'pursuant to leave granted by this Court,' " when no such leave existed. First, the Canons presented no evidence that counsel backdated filings. Instead, they seem to misunderstand that a party prepares the summons *for* the court *before* the summons is signed by a court clerk. (See

at p. 305.)

12

Code Civ. Proc., § 412.20, subd. (a).) Therefore, a complaint and amended summons electronically file-stamped on May 16, 2025, will not be signed by the court clerk before that date. Second, Slattery did not declare the court gave him leave to file the amended complaint but rather that he had leave to serve it on the Canons by mail. Specifically, Slattery stated, "pursuant to leave granted by this Court, the First Amended Complaint was served on Defendants by mail," and "the First Amended Complaint in the Lead Case was served on all Defendants via mail, pursuant to this Court's order authorizing alternative service." Substantial evidence supports the conclusion that the court did authorize alternative service because the court ordered "service of documents shall be through U.S. Post Mail." Thus, the court had substantial evidence to conclude counsel did not misrepresent the time of filing or the court's order. Further, if leave of the court was required to file the amended complaint, the Canons fail to demonstrate why filing the amended complaint amounts to misconduct, and if misconduct, why it requires disqualification and not a different remedy.

Finally, the Canons assert the Brammells repeatedly filmed them without consent but there is no evidence these actions were directed by their attorney, let alone that there will be any continuing effect on the proceedings because the court issued an order that "[c]ameras may be installed and focused *only* on the property line." (Italics added.) Thus, the Canons fail to show that any of the alleged wrongdoing, even if assumed true for purposes of this discussion, could not be addressed through lesser sanctions. We conclude the court's order is supported by substantial evidence and it did not abuse its discretion in denying the motion to disqualify counsel.

C.    *Sanctions*

The Brammells assert the Canons should be sanctioned, alleging their appeal is meritless and intended to cause delay.

"Whether to impose appellate sanctions is a matter within our discretion." (*Citizens for Amending Proposition L v. City of Pomona* (2018) 28 Cal.App.5th 1159, 1194.) "[W]e may award sanctions when an appeal is frivolous and taken solely to cause delay. '[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.]' [Citation.] 'The two standards are often used together, with one providing evidence of the other. Thus, the total lack of merit of an appeal is viewed as evidence that appellant must have intended it only for delay.' " (*Ibid.*)

The Canons' arguments are unconvincing, but we are not persuaded that their appeal was taken for an improper motive. Accordingly, we decline to impose sanctions.

## IV. DISPOSITION

The order is affirmed.  The Brammells' request for sanctions is denied. The Brammells are awarded their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

RUBIN, J.

WE CONCUR:

O'ROURKE, Acting P. J.

BUCHANAN, J.